**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **SARA ESTHER SOSA,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:25-CV-00147-KC** |
| | § | |
| **MVM – TRAVEL YOUTH CARE,** | § | |
| | § | |
| ***Defendant.*** | § | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant MVM – Travel Youth Care's "Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint" ("Motion"), filed on October 7, 2025. ECF No. 16. This matter was referred to the undersigned for a Report and Recommendation on June 14, 2026, by United States District Judge Kathleen Cardone. For the reasons set forth below, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED**.

## I. Background

### A. Procedural Background

Plaintiff Sara Esther Sosa, proceeding *pro se*, filed a motion to proceed with this case *in forma pauperis* on April 25, 2025. ECF No. 1. After paying the filing fee (ECF No. 2), Plaintiff's motion was rendered moot (ECF No. 4). Her Complaint was filed on April 29, 2025, in the Western District of Texas, El Paso Division. ECF No. 3.

Because more than ninety days had passed since Plaintiff had filed her Complaint, and she had not timely effected service or filed proof of service, the Court ordered Plaintiff to file proof of service on Defendant "no later than August 28, 2025." ECF No. 10 (emphasis omitted) (citing Fed. R. Civ. P. 4(m)). Plaintiff failed to comply with the Court's Order and was

subsequently ordered to show cause or possibly "face dismissal of all claims against Defendant," "by no later than September 19, 2025, for the failure to meet the Court's previous deadlines." ECF No. 11 (emphasis omitted).

Defendant was then served on September 18, 2025 (ECF No. 15), and subsequently filed the instant Motion to Dismiss Plaintiff's Original Complaint on October 7, 2025. ECF No. 16. Plaintiff filed her response to Defendant's Motion to Dismiss on October 14, 2025. ECF No. 18. Defendant subsequently filed its reply supporting its original Motion to Dismiss on October 21, 2025. ECF No. 19.

As will be detailed further below, the Plaintiff alleges discrimination based on sex as a result of a 2023 disciplinary incident, and her 2024 termination. *See* Pl.'s Compl. ECF No. 3 at 12. The Defendant's motion to dismiss alleges that Plaintiff's claim as it regards the 2023 incident is untimely due to failure to exhaust administrative remedies, and that her claim regarding termination fails to state a claim. *See* Def.'s Mot. to Dismiss, ECF No. 16.

**B. Factual Background**

Sara Esther Sosa ("Sosa") is a former female Child and Youth Care worker at MVM – Travel Youth Care ("MVM"). Pl.'s Compl., ECF No. 3 at 12.[1] Sosa contends that in 2023 she was told she dressed unprofessionally based on the red color of her nails, following classes provided by MVM addressing how to dress appropriately. *Id.* at 3. Sosa claims that the class only addressed nail length, not color. *Id.* On September 22, 2024, Sosa sat on the same flight as coworker Michael Marquez, traveling to complete a work assignment. *Id.* at 2. On September 23, 2024, Site Supervisor Damir Somic informed Sosa that Michael Marquez had filed an incident report and that another person would later reach out to her about it. *Id.*; *see generally id.* at 12

[1] For all citations to court documents, including the parties' filings, the Court uses the pagination assigned by the Court's electronic docketing system.

(further alleging that Somic stated that Sosa would be "suspended until further notice"). On September 27, 2024, MVM's Human Resources business partner questioned Sosa about whether she had inappropriately touched Michael Marquez, asked him to dinner, or sat next to him, to which Sosa replied "no." *Id.* at 2–3. On October 16, 2024, Sosa appeared at MVM's office and was informed by Damir Somic that she was terminated without explanation. *Id.* at 3, 12. Sosa further claims she emailed Pat Rivera from Human Resources and never received a response. *Id.* at 3. She later called MVM but was told she was not allowed to enter the office. *Id.*

Sosa alleges she filed her Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2024. *Id.* at 4, ¶ 5. The Charge attached to the Complaint, however, reflects a filing date of March 10, 2025. *Id.* at 12–14. The Charge states that Sosa was employed by MVM beginning "on or around July 2022," and that she "performed successfully" during that period. *Id.* at 12. Notably, however, the Charge does not reference any incident occurring in 2023 but describes the surrounding events and the harm suffered arising out of the incident report filed by Michael Marquez. *Id.* The Charge indicates Sosa's reason for adverse action is that the accusation of "inappropriate behavior by a male coworker" is "pretext." *Id.* at 13. That "[t]he complete accusation, suspension and termination were based on false statements that were fabricated to harm [her] reputation and livelihood." *Id.* As such, Sosa claims she was "discriminated against in the manner described above due to [her] [g]ender-female, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.*; *see id.* at 1, ¶ 1 (identifying the statutory basis as "42 USC §§ 2000e et seq."); *id.* at 5 (marking the box for discrimination based on "[s]ex (gender, pregnancy or sexual harassment) . . ."). The earliest and latest dates in which such discrimination occurred, as indicated in the Charge, are September 20, 2024, and October 16, 2024, respectively. *Id.* at 12.

Sosa claims she received a Notice of Right to Sue ("Notice") on March 7, 2025. *Id.* ¶ 6a, at 4, 8-9 (the EEOC Dismissal and Notice of Rights attached to the Complaint is dated March 12, 2025). The Notice itself is a dismissal of the above charge stating that the "facts alleged in the charge fail to state a claim under any of the laws enforced by the EEOC." *Id.* at 8. Additionally, the Notice provides that if Sosa were to "file a lawsuit against the respondent . . . [the] lawsuit must be filed within 90 days [upon] receipt of [the] notice." *Id.*

## II. Legal Standards

### A. *Pro Se* Pleadings

As an initial matter, *Pro se* pleadings are held to "'less stringent standards than formal pleadings drafted by lawyers.'" *Savage v. Westcott*, 152 F.4th 687, 692 (5th Cir. 2025) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)); *see also Haines v. Kerner*, 404 U.S. 519, 520–521 (1972) (per curiam) (originating the proposition). Nevertheless, a *pro se* party is not exempt "'from compliance with relevant rules of procedural and substantive law.'" *Hulsey v. State of Tex.*, 929 F.2d 168, 171 (5th Cir. 1991) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam)).

### B. Rule 12(b)(6) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a 12(b)(6) motion, a court must accept "'all pleaded facts as true' and view 'them in the light most favorable to the plaintiff.'" *Armadillo Hotel Group, L.L.C. v. Harris*, 84 F.4th 623, 632 (5th Cir. 2023) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a 12(b)(6) motion to dismiss, "[a] pleading's factual allegations 'must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true.'" *Armstrong v. Ashley*, 60 F.4th 262, 270 (5th Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may "rely on only the complaint[,] its proper attachments . . . [,] 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (first citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006); and then quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint . . ." *Id.* Further, if a plaintiff's "allegations are contradicted by facts disclosed by a document attached to the complaint . . . [,] is central to the claim and referenced by the complaint, then the plaintiff's contradicted allegations are not accepted as true." *Waller v. Jet Specialty, Inc.*, No. MO:23-CV-00121-DC-RCG, 2024 WL 5038568, at *6–7 (W.D. Tex. Nov. 19, 2024), *report and recommendation adopted*, No. MO:23-CV-00121-DC, 2024 WL 5011643 (W.D. Tex. Dec. 6, 2024) (citing *Carter v. Target Corp.*, 541 Fed. Appx. 413, 417 (5th Cir. 2013) (per curiam)).

A motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

## III. Discussion

MVM moves to dismiss Sosa's complaint on two grounds: (1) that Sosa failed to administratively exhaust any claim arising from the 2023 incident, and (2) that the Complaint fails to state a plausible claim for sex discrimination under Title VII. Def.'s Mot. to Dismiss, ECF No. 16, at 5–7. In response, Sosa argues that the 2023 incident is timely and exhausted under the continuing violation doctrine; it may alternatively be considered part of a hostile work environment claim; that the EEOC Charge need not detail every incident; and that the Complaint's remaining allegations plausibly state a claim for sex discrimination. Pl.'s Resp., ECF No. 18, at 2–8.

### A. Allegations of New Facts

Before turning to the merits, the Court addresses a threshold issue that bears on both grounds of MVM's motion. This issue regards facts alleged by the opposing party as new facts, and therefore improper. The following discussion addresses this matter. In its reply, MVM identifies several statements in Sosa's response that it contends are improper new factual allegations. Def.'s Reply, ECF No. 19, at 3–4. Some of these are not new facts at all, but characterizations of facts already pled. Sosa's description of the 2023 incident as "gender-based grooming criticism" and the 2023-to-2024 sequence as "an ongoing pattern" are labels applied to conduct already alleged in the Complaint. Pl.'s Resp., ECF No. 18, at 2–3, 5. Her characterization of the investigation as "pretextual" and based on "fabricated allegations" is, if anything, drawn nearly verbatim from the Charge itself, which states that Sosa believed the

accusation against her to be "pretext" and that her "suspension and termination were based on false statements that were fabricated to harm [her] reputation and livelihood." *Id.* at 3; Pl.'s Compl. at 13. Because these are characterizations of, and arguments about, facts already before the Court and are not new factual allegations, the previously discussed rule in *Dorsey* barring consideration of new facts raised in a response brief does not exclude them, and the Court considers them as argument. *See Dorsey,* 540 F.3d at 338.

Other assertions in Sosa's Response, however, are genuinely new. Her claim that Michael Marquez, the coworker who filed the incident report against her, "suffered no consequences for making false accusations," and her claim that she "was denied any meaningful opportunity to defend herself or present her side of the story," appear nowhere in the Complaint or its attachments. Pl.'s Resp. at 5. The latter is also in tension with the Complaint's own allegation that Sosa was asked specific questions by Human Resources and denied the accusations against her. Pl.'s Compl. ¶ 2, at 2–3. Additionally, Sosa's assertion that Marquez's underlying report specifically accused her of "unwanted advances" is likewise a new factual allegation. Pl.'s Resp. at 5. While the Complaint pleads the substance of Human Resources' follow-up questions to Sosa, neither the Complaint nor the Charge ever states what Marquez's report itself alleged. Sosa's assertion provides that missing content for the first time in her response. Because the Court may not consider factual allegations raised for the first time in response to a motion to dismiss, the Court does not consider either assertion in resolving MVM's motion. *See Dorsey,* 540 F.3d at 338; *see also Qashou v. City of San Antonio*, No. 5:25-CV-00459-JKP, 2025 WL 3461736, at *6 (W.D. Tex. Dec. 2, 2025) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)); *McDavid v. Houston Indep. Sch. Dist.*, No. CV H-21-993, 2021 WL 4555241, at *4 (S.D. Tex. Oct. 5, 2021) (rejecting the plaintiff's attempt to "use a response

to a motion to dismiss as a backdoor to add allegations that [the plaintiff] did not plead in her complaint"); *Coach, Inc. v. Angela's Boutique*, No. CIV.A. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011) ("New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings").

**B. Sosa Has Not Administratively Exhausted Any Claim Arising From the 2023 Incident**

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the [Equal Employment Opportunity Commission ("EEOC")] and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996) (per curiam)).

The Supreme Court has summarized the procedures for administrative exhaustion for Title VII claims in its opinion in *Fort Bend County, Texas v. Davis*:

> Title VII directs that a charge shall be filed with the EEOC by or on behalf of a person claiming to be aggrieved within 180 days after the alleged unlawful employment practice occurs. For complaints concerning a practice occurring in a State or political subdivision that has a fair employment agency of its own empowered to grant or seek relief, Title VII instructs the complainant to file her charge first with the state or local agency. The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended, whichever is earlier, to file a charge with the EEOC. If the state or local agency has a "worksharing" agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other.

587 U.S. 541, 544 (2019) (internal marks omitted). "In Texas, the charge must be filed within 300 days after the alleged unlawful conduct occurred" because the Civil Rights Division of the Texas Workforce Commission ("TWCCRD") and the EEOC have a worksharing agreement. *Weathers v. Houston Methodist Hosp.*, 116 F.4th 324, 329 (5th Cir. 2024) (citing 42 U.S.C. § 2000e-5(e)(1)); *see* 40 Tex. Admin. Code § 819.76. Accordingly, the plaintiff in the present case

had 300 days after the unlawful employment practice to file a charge with the EEOC. *See Garcia v. City of Amarillo, Tex.*, No. 2:18-CV-95-Z-BR, 2020 WL 4208060, at *3 (N.D. Tex. July 22, 2020), aff'd, 836 Fed. Appx. 318 (5th Cir. 2021); *see also Hartt as next friends for J.H. v. Evadale Indep. Sch. Dist.*, 772 F. Supp. 3d 749, 763 (E.D. Tex. 2025) (recognizing that Texas is a deferral state and therefore affords plaintiffs 300 days to file an EEOC charge). If the EEOC determines that "[T]here is n[o] reasonable cause to believe that the charge is true, the Commission is to dismiss the charge and notify the complainant of his or her right to sue in court." *Davis*, 587 U.S. at 545 (internal marks omitted). Further, "[w]hether or not the EEOC acts on the charge, a complainant is entitled to a right-to-sue notice 180 days after the charge is filed. And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer." *Id.* (internal marks omitted). Notably, "Title VII's charge-filing requirement is a mandatory processing rule and an affirmative defense available to defendants if timely raised." *Hartt*, 772 F. Supp. 3d at 763 n.14.

**i. The 2023 Incident is Not Timely Under the Continuing Violation Doctrine**

Standing alone, Sosa's claim regarding the 2023 incident is untimely. Sosa does not identify when in 2023 the incident regarding her nails occurred. Nevertheless, even accepting as true Sosa's alleged Charge-filing date of November 22, 2024, (rather than the March 10, 2025 filing date reflected in the Charge itself), well over 300 days[2] had elapsed between the last day of 2023 and November 22, 2024. *See Waller*, 2024 WL 5038568, at *6–7 (declining to accept as true allegations contradicted by a document attached to the complaint that was central to the plaintiff's claims). This is well beyond the 300-day period Title VII allows. *See* 42 U.S.C. §

[2] Specifically, 327 days elapsed between December 31, 2023, and November 22, 2024, the earliest date Sosa alleges she filed her Charge. Because Sosa does not specify the exact date of the 2023 incident, the Court uses the latest possible date, which is most favorable to her claim.

2000(e)(1). Sosa does not dispute this calculation. *See* Pl.'s Resp. at 2. Instead, she argues that the 2023 incident is nonetheless timely under the continuing violation doctrine, because it was "not an isolated event but rather the beginning of a pattern" of "sex-based harassment and discrimination that culminated in [her] termination in October 2024." *Id.* at 2–3.

In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court examined "whether acts that fall outside of the statutory time period for filing charges set forth in 42 U.S.C. § 2000e–5(e) are actionable under Title VII." 536 U.S. 101, 108 (2002). The Court drew a sharp distinction between two categories of Title VII claims. The Fifth Circuit has summarized the Supreme Court's holding in *Morgan* as follows:

> That decision distinguishes discrete acts that form the basis of traditional discrimination claims from continuing conduct that forms the basis of hostile work environment claims. Claims alleging discrete acts are not subject to the continuing violation doctrine; hostile workplace claims are. Hostile environment claims are "continuing" because they involve repeated conduct, so the "unlawful employment practice" cannot be said to occur on any particular day.

*Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017), *as revised* (Mar. 13, 2017) (quoting *Morgan*, 536 U.S. at 115–17). Accordingly, "as long as 'an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability.'" *Id.* (quoting *Morgan*, 536 U.S. at 117). Outside of hostile work environment claims, *Morgan* held that § 2000e–5(e)(1) "precludes recovery for time-barred discrete acts of discrimination–such as termination, failure to promote, denial of transfer, or refusal to hire–and retaliation, even if they are related to acts alleged in timely filed charges." *Lee v. Mission Chevrolet, Ltd.*, No. EP-16-CV-00034-DCG, 2017 WL 4784368, at *7 (W.D. Tex. Oct. 23, 2017) (citing *Morgan*, 536 U.S. at 113–14). It necessarily follows that the continuing violation doctrine does not apply to discrete acts of discrimination, rendering claims based on those acts

subject to challenge as time-barred. *See Tompkins v. Amarillo Coll.*, No. 2:19-CV-27-Z-BR, 2021 WL 4796916, at *4–5 (N.D. Tex. May 14, 2021) (holding that only hostile work environment claims may rely on the continuing violation doctrine, whereas discrete discrimination and retaliation claims occurring outside the 300-day filing period are time-barred).

Here, Sosa alleges two discrete acts: the 2023 criticism regarding the color of her nail polish and her October 2024 termination following an investigation into Michael Marquez's incident report. Pl.'s Compl. at 2–3. Neither is a claim that depends on the cumulative effect of repeated conduct, which is what hostile work environment claims entail. Each is a single, identifiable employment decision that was complete at the time it occurred. *See Morgan*, 536 U.S. at 114 (holding that each discrete discriminatory or retaliatory act constitutes a separate unlawful employment practice, and a plaintiff may recover only for those acts occurring within the statutory filing period). Because the continuing violation doctrine does not apply to discrete acts regardless of whether those facts are related to one another, Sosa's characterization of the 2023 incident and her termination as part of "a pattern" does not render the incident timely. Fundamentally, Sosa's argument is an attempt to invoke a hostile work environment theory to rescue an otherwise time-barred discrete act.

Accordingly, because the 2023 incident is a discrete act to which the continuing violation doctrine does not apply, and because it falls outside the 300-day filing period under either alleged Charge-filing date, the Court **RECOMMENDS** that any claim arising from the 2023 incident be **DISMISSED** as untimely.

**ii. Any Hostile Work Environment Theory is Unexhausted**

Sosa alternatively argues that the 2023 incident may be considered part of a hostile work environment claim by relying on *Morgan* for the notion that such claims are "'different in kind from discrete acts' of discrimination and that 'their very nature involves repeated conduct.'" Pl.'s Resp. at 3 (quoting *Morgan*, 536 U.S. at 115). In turn, MVM argues that because "the Complaint does not plead any hostile work environment claim under Title VII" and that "even if [Sosa] had pled that claim, it would be subject to immediate dismissal for failure to exhaust administrative remedies" since the Charge made no mention of that claim. Def.'s Reply at 7.

A hostile work environment claim must itself be exhausted before the EEOC and is not automatically carried along by a charge that describes only discrete acts. The Fifth Circuit in *Gates v. Lyondell Petrochemical Co.*, held that "hostile [work] environment . . . claims could not be expected to grow out of [an] EEOC discrimination charge when [a plaintiff] charged only [their] employer's discrete acts in terminating [plaintiff], and made no mention of a hostile work environment . . . ." 227 Fed. Appx. 409, 409 (5th Cir. 2007) (per curiam); *see also Hill v. Dep't of Veterans Affairs*, No. 08-60532, 2009 WL 348767, at *4 (5th Cir. Feb. 12, 2009) (explaining that the EEOC investigation into a hostile work environment could not reasonably be expected to grow out of a charge alleging only discrete discriminatory acts).

The Plaintiff's status as a *pro se* litigant has some bearing on the Court's evaluation of the scope of her allegations in the EEOC Charge. As recognized by a district court in the Northern District of Texas, "since the 'provisions of Title VII were not designed for the sophisticated, and most complaints are initiated *pro se*, the scope of the EEOC complaint should be construed liberally.'" *Trevino v. SAIA Motor Freight Line, LLC*, No. 4:20-CV-00825-P-BP, 2021 WL 1009317, at *4 (N.D. Tex. Jan. 26, 2021), *report and recommendation adopted*, No. 4:20-CV-00825-P, 2021 WL 977096 (N.D. Tex. Mar. 16, 2021) (quoting *Pacheco v. Mineta*, 448

F.3d 783, 788 (5th Cir. 2006)). The Court does not seek to determine whether Sosa's Charge uses the words "hostile work environment," but whether its substance, given her *pro se* status, describes conduct from which an investigation could reasonably have deduced a pattern of ongoing harassment rather than a single discrete event.

Sosa's Charge does not describe an ongoing pattern of harassment. Sosa's Charge describes her employment beginning in July 2022, during which "she performed successfully," followed by a September 23, 2024, phone call informing her that she was suspended; a September 27, 2024, call in which she was questioned about the accusation against her; and her October 16, 2024, termination, which she attributed to pretext. Pl.'s Compl. at 12–13. The Charge identifies a period of less than four weeks–September 20, 2024, and October 16, 2024–as the earliest and latest dates of the discrimination alleged. *Id.* at 12. Even construed as generously as the *pro se* standard allows, this is a narrative of two telephone calls and a termination arising from a single accusation. It does not describe repeated or ongoing conduct of the kind that would put an investigator on notice of a hostile work environment. Nor does it contain any language suggesting Sosa experienced a pattern of mistreatment over time. Sosa did not mark the box on her Complaint form indicating that she was subjected to harassment, which is a distinct, separate box from the box for discrimination based on sex. *See* Pl.'s Compl. at 4–5. An EEOC investigation prompted by this Charge could not reasonably have been expected to expand into an inquiry regarding a hostile work environment, let alone one reaching back to conduct from 2023 which the Charge did not mention at all. *See Bechard v. VIA Metro. Transit*, No. 10CA285, 2010 WL 3928491, at *2 (W.D. Tex. Oct. 5, 2010) (citing *Hill v. Dep't of Veterans Affairs*, 2009 WL 348767, at *4 (5th Cir. 2009)) (finding no exhausted hostile work environment claim where the charge described only discrete incidents without indicating a broader pattern).

Further, Sosa's reliance on *Morgan* does not change this result since *Morgan* answers a different question than what's presented in this case. *Morgan* holds that once a hostile work environment claim is otherwise properly exhausted, the entire period of the hostile environment may be considered for liability purposes so long as one contributing act falls within the limitations period. 536 U.S. at 117. It says nothing about whether a claim was exhausted in the first place, and does not relieve a plaintiff of that antecedent requirement. Even liberally construed, Sosa's Charge gives no indication of a hostile work environment claim, and thus *Morgan's* timeliness holding has no justification to apply. Thus, MVM is correct that any such theory was not administratively exhausted. *See* Def.'s Reply at 7.

Accordingly, the Court **RECOMMENDS** that, to the extent the Complaint may be construed to raise a hostile work environment claim, it be **DISMISSED** for failure to exhaust administrative remedies.

### C. Sosa Fails to State a Plausible Claim for Sex Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discharg[ing] any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1). "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)); *see also York v. Ahuja*, No. SA-22-CV-00451-XR, 2023 WL 3996914, at *3 (W.D. Tex. June 13, 2023), *aff'd sub nom. York v. Ezell*, No. 24-50770, 2025 WL 1577822 (5th Cir. June 4, 2025).

To prove discriminatory motive, a plaintiff may demonstrate either direct or circumstantial evidence. *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994). "When a plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination." *Id.* Specifically, a plaintiff's disparate treatment claim that relies on circumstantial evidence would "ultimately have to show," that plaintiff "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *York*, 2023 WL 3996914, at *4 (citing *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016)). Courts have utilized *McDonnell Douglas* as it has been said to "be [a] 'helpful reference' . . . when [a] court is determining whether a plaintiff has plausibly alleged the ultimate elements of [a] disparate treatment claim." *Cicalese*, 924 F.3d at 767 (citing *Chhim*, 836 F.3d at 470).

"The Supreme Court, however, has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements." *Johnson v. Fed. Info. Sys., Inc.*, No. SA-22-CV-00796-XR, 2022 WL 4298458, at *5 (W.D. Tex. Sept. 16, 2022) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–11 (2002)). As the Supreme Court explained in *Swierkiewicz*, "the precise requirements of a prima facie case can vary depending on the context" and were "never intended

to be rigid, mechanized, or ritualistic." 534 U.S. at 512 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Consistent with that principle, a plaintiff need not plead a prima facie case of discrimination under *McDonnell Douglas* to survive a Rule 12(b)(6) motion; rather, the complaint need only contain sufficient factual matter to state a plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); s*ee also Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (holding that a district court erred when it required a plaintiff to plead each element of a prima facie case of discrimination at the Rule 12(b)(6) stage). However, plaintiff must still "plead sufficient facts on all of the *ultimate* elements of a disparate treatment claim to make [their] case plausible." *Chhim*, 836 F.3d at 470 (emphasis added).

Rather, the Fifth Circuit has clarified that there are two elements a plaintiff must ultimately plead to support a disparate treatment claim under Title VII: (1) an "adverse employment action," (2) taken against a plaintiff "*because* of her protected status." *Raj*, 714 F.3d at 331 (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 576 (5th Cir. 2004) (emphasis added)). That is to say that a complaint must contain facts, either direct or circumstantial, "that would raise an inference that the employer's actions were based on the plaintiff's sex, or that the employer 'treated *similarly situated* employees [outside of the protected class] more favorably.'" *Brooks v. W. Tex. Credit Union*, No. 24-CV-00116-DC-RCG, 2025 WL 596647 (W.D. Tex. Jan. 31, 2025), *report and recommendation adopted*, No. MO:24-CV-00116-DC, 2025 WL 597090 (W.D. Tex. Feb. 24, 2025) (quoting *Raj*, 714 F.3d at 331 (emphasis added)). It necessarily follows that a court "inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Cicalese*, 924 F.3d at 767 (citing *Swierkiewicz*, 534 U.S. at 512).

Applying these principles, however, Sosa fails to plead sufficient facts in her Complaint to make a plausible claim that MVM terminated her employment as a Child and Youth Care Worker *because* of her female sex.

Sosa alleges that she flew on the same flight as coworker Michael Marquez while traveling for a work assignment and that Site Supervisor Damir Somic subsequently told her Marquez had made an unspecified report and that she would be contacted about it later. Pl.'s Compl. at 2–3. That MVM's Human Resources business partner then asked her whether she had touched Marquez, asked him to dinner, or sat next to him, to all of which she answered "no." *Id.* She then alleges that she was terminated on October 16, 2024, without explanation. *Id.* Standing alone, these facts describe an employer investigating an accusation and subsequently terminating the employee under investigation. Without more, they do not permit the inference that MVM acted *because* Sosa is a woman rather than because of the accusation itself, whatever its merits may be. The Complaint contains no allegation that any MVM decisionmaker made a remark referencing Sosa's sex, that any policy at MVM was applied differently based on sex, or that gender played any specific role in either the investigation or the decision to terminate her.

Sosa has not pled a comparator. Though the *McDonnell Douglas* framework is not a rigid pleading requirement, pleading facts that support an inference that Sosa was terminated "*because* of her protected status" is all that is required at the motion to dismiss stage. *Cicalese*, 924 F.3d at 767 (emphasis added). Sosa's Response asserts for the first time that Michael Marquez "suffered no consequences for making false accusations" against her. Pl.'s Resp. at 5. As discussed earlier, however, that assertion is a new factual allegation appearing nowhere in the Complaint or its attachments, and the Court does not consider it in evaluating MVM's Motion. *See supra* Part III, Section A, pp. 6–8. Even if it were properly before the Court, it would not establish a valid

comparator because Sosa pleaded no facts indicating that Marquez held the same job responsibilities, reported to the same supervisor, or engaged in comparable conduct. *See Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (dismissing Title VII claim at Rule 12(b)(6) stage where the complaint "d[id] not contain any facts about any comparators at all," including no allegation that a similarly situated employee outside the protected class, with a similar job and supervisor, who engaged in the same conduct, received more favorable treatment). Marquez was the accuser, and nothing in the Complaint suggests that he was ever in Sosa's position of being investigated for anything at all. Comparator allegations aside, the Complaint presents no other facts sufficient to "nudge [] [Sosa's] claims across the line from conceivable to plausible." *Olivarez*, 997 F.3d at 600 (citing *Twombly*, 550 U.S. at 547).

Fifth Circuit and Western District of Texas decisions also illustrate the threshold between plausible and implausible discrimination claims. *Compare Cicalese*, 924 F.3d at 768 (vacating dismissal where plaintiffs plead detailed facts including specific derogatory remarks, dates, and the identities of the individuals involved, and holding that scrutinizing whether comparators were truly "similarly situated" is a summary-judgment inquiry, not a pleading requirement), *with Chhim*, 836 F.3d at 470–71 (affirming dismissal where plaintiff's complaint identified a comparator but pled no facts suggesting that comparator was less qualified or similarly situated), *Johnson*, 2022 WL 4298458, at *6–7 (dismissing claim where plaintiff alleged a coworker treated her poorly but pled no facts connecting that coworker's conduct to the decisionmakers who terminated her), *and Brooks*, 2025 WL 596647, at *4–5 (dismissing claim where plaintiff's only comparator evidence was a pay disparity with a differently titled executive, with no facts suggesting the two roles were comparable).

Sosa argues that the substance of Human Resources' questions imply "inappropriate sexual conduct" and reveal that the underlying accusation was that she, "as a woman," made unwarranted advances toward a male coworker. Pl.'s Resp. at 5. Even accepting that characterization, it does not advance her claim because an employer's investigation into an accusation involving conduct between a male and female does not itself suggest the employer's motive in investigating the employee was her sex rather than the conduct the accusation described. Nothing in the Complaint suggests that MVM would not have investigated a similar accusation against a male employee or that men accused of the same conduct were treated differently.

Sosa further relies on the 2023 nail polish incident to support a "pattern" of sex discrimination. Pl.'s Resp. at 6–7. As discussed above, however, that incident is neither timely nor exhausted and is not properly considered here. *See supra* Part III, Section B, pp. 8–14. Even if it were, a single instance of appearance-related feedback occurring roughly a year before her termination does not itself plausibly connect to a termination arising from an unrelated incident report filed nearly a year later.

Finally, Sosa points to the temporal proximity between Marquez's report in September 2024 and her termination in October 2024. Pl.'s Resp. at 6. This argument fails for two reasons. First, temporal proximity is a causation concept specific to retaliation claims, which asks whether an employer acted because an employee "engag[ed] in protected activit[y]." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272–73 (2001) (per curiam). This is different from a claim of status-based discrimination. Second, *Breeden* held that temporal proximity alone establishes causation only where the timing is "very close," 532 U.S. at 273, and the Fifth Circuit likewise held that "'[w]ithout more than timing allegations,'" a plaintiff cannot establish causation from

proximity alone. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (quoting *Roberson v. Alltel Info. Services*, 373 F.3d 647, 656 (5th Cir. 2004)). Because temporal proximity is tied to retaliation and not discrimination claims, it has no bearing in the present case.

Sosa's Complaint, even if it were accepted as true, construed liberally in light of her *pro se* status, does not permit the reasonable inference that MVM's decision to terminate her was because she of her sex, rather than because of the incident report filed by a coworker that MVM investigated.

Accordingly, the Court **RECOMMENDS** that Sosa's sex discrimination claim be **DISMISSED** for failure to state a claim upon which relief may be granted.

**D. Leave to Amend**

Finally, the Court considers Sosa's contention that dismissal with prejudice would be inappropriate. *See* Pl.'s Resp., at 8–10. Consequently, Sosa desires leave to amend her complaint. *Id.*

The Federal Rules of Civil Procedure allow a party to amend its pleading "once as a matter of course," but afterwards "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Whether leave to amend should be granted is entrusted to the sound discretion of the district court . . .," *Quintanilla v. Tex. Television Inc.*, 139 F.3d 494, 499 (5th Cir. 1998), and Rule 15(a) "'evidences bias in favor of granting leave to amend.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). Therefore, "absent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to

cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to permit denial.'" *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420 (5th Cir. 2004) (first quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962); and then quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)). Nevertheless, the Fifth Circuit has observed that "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

The claim arising from the 2023 nail polish incident cannot ever benefit from this general preference for amendment due to the defects identified in Part B of this Recommendation. *See supra* Part B, 8–14. No amendment could alter the timing of the Charge's filing relative to when the nail polish incident was alleged to have occurred. Amendment as to that claim would therefore be futile. *See Great Plains Tr. Co.*, 313 F.3d at 329 (leave need not be given where "it is clear that the defects are incurable").

The portion of Sosa's sex discrimination addressed in Part C above, however, stands differently. *See supra* Part C, 14–20. The Complaint as pled does not state a plausible claim, but the Court cannot say with certainty that no additional facts could cure that deficiency. Sosa's Response asks the Court for leave to amend and represents that she "can provide additional factual detail regarding the circumstances of her termination, the nature of [Michael Marquez's] allegations, and the discriminatory treatment she experienced." Pl.'s Resp. at 9. Given that position, the record does not yet reveal what Sosa might be able to plead, and nothing before the Court suggests undue delay, bad faith, prejudice to MVM, or any other substantial reasons that

would justify denying leave outright. Therefore, consistent with the Fifth Circuit's guidance that plaintiffs should ordinarily be afforded at least one opportunity to cure pleading deficiencies before complete dismissal, the Court finds that justice requires affording Sosa that opportunity here. *See Great Plains Tr. Co.*, 313 F.3d at 329.

Accordingly, this Court affords Sosa a 14-day window, running concurrently with the time to file objections to this Report and Recommendation, to show a basis for amending her sex discrimination claim. This shall include specific facts she would plead and how they would cure the deficiencies identified in part C of this Recommendation. *See supra* Part C, 14–20. If Sosa fails to make that showing, the Court **RECOMMENDS** her sex discrimination claim be **DISMISSED WITH PREJUDICE**. Regardless of any such showing, however, the Court **RECOMMENDS** that any claim arising from the 2023 incident be **DISMISSED WITH PREJUDICE**, as amendment with reference to that claim would be futile.

**IV. Conclusion**

For the foregoing reasons the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** and this case be dismissed. However, if Plaintiff, within the time to file objections to this Report and Recommendation, shows a basis to amend her complaint as to her sex discrimination claim as explained above, the undersigned **RECOMMENDS** leave to amend be granted.

**SIGNED** this 10th day of August, 2026

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**